```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------X
d'AMICO DRY d.a.c.                                     :
                                                       :
                        Plaintiff,                     :
                                                       :
        - against -                                    :
                                                       :      2: 20-cv-661
XCOAL ENERGY AND RESOURCES                             :
GmbH                                                   :
                        Defendant.                     :
-------------------------------------------------------X
```

## VERIFIED COMPLAINT

Plaintiff, d'AMICO DRY d.a.c. ("Plaintiff"), by and through its attorneys, Thomson, Rhodes & Cowie, P.C. and Tisdale Law Offices, LLC, *pro hac vice* as and for its Verified Complaint against the Defendant, XCOAL ENERGY AND RESOURCES GmbH ("Defendant"), alleges, upon information and belief, as follows:

### JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333 since the claim for which security is sought arises out of a Charter Party dated September 30, 2019, the breach of which gives rise to a maritime claim.

2. As will be discussed more fully herein, Plaintiff has commenced New York arbitration against Defendant in accordance with the Charter Party and the Federal Arbitration Act 9 U.S.C. § 1 *et seq.* by appointing an arbitrator and demanding that Defendant do the same.

3. The arbitration proceedings arise out of a Charter Party dated September 30, 2019 between Plaintiff and Defendant. A true copy of the Fixture Recap and Americanized Welsh

Charter Party 1979 with Rider Clauses is attached hereto as **Exhibit 1** and will be specifically identified *infra*.

4.      Venue is proper in this district because there is or will be during the pendency of this action property due and owing to the Defendant within this district and in the hands of a non-party garnishee, namely PNC Bank ("PNC") which has an office and place of business within this Judicial District.

5.      It is believed that non-party Garnishee PNC may be holding property subject to this maritime attachment since Defendant banks with PNC and has used this account in the near past in transactions with Plaintiff.

**PARTIES**

6.      Plaintiff is a foreign corporation organized and existing under foreign law with an office and principal place of business in Ireland.

7.      Upon information and belief, Defendant XCoal has a principal place of business in Switzerland and organized and exists under foreign law.

**DEFENDANT'S BREACH OF THE CHARTER PARTY**

8.      On or about September 30, 2019, Plaintiff entered into a charter party in which it agreed to charter the M/V MEDI HONG KONG or substitute vessel. The substitute vessel was the M/V SHANDONG HONG TU ("Vessel"), a Hong Kong-flagged bulk carrier. Plaintiff chartered the Vessel to Defendant in accordance with the Charter Party attached hereto as **Exhibit 1**. The charter party consists of a Fixture Recap and Americanized Welsh Charter Party 1979 form with Rider Clauses.

9.      With respect to the payment of freight, the Charter Party provides that Defendant must pay 90% of freight within 3 working / business days after signing and releasing the bills of

2

lading but always prior to breaking bulk at the discharge port with the balance of freight paid within 30 days after completion of discharge against Plaintiff's invoice. **Exhibit 1**, Clause 30.

10. The Charter Party further provides that undisputed deadfreight and demurrage will be paid against Plaintiff's invoice within 30 days after discharge of the cargo. The cargo was discharged on January 9, 2020.

11. Defendant paid 90 % of the freight earned in accordance with Clause 30 of the charter party within the time required.

12. In accordance with Clause 30 of the charter party, Plaintiff issued its Freight Invoice within the timeframe set forth above. The Freight Invoice included charges for the 10% freight balance, deadfreight, demurrage, and the bunkering port deviation expenses. The outstanding sum due under the Freight Invoice is in the total principal amount of $ 202,406.59, exclusive of interest. Attached as **Exhibit 2** is a true and accurate copy of the Plaintiff's Freight Invoice.

13. Plaintiff sent this Freight Invoice to Defendant on January 21, 2020. To date, Defendant has expressed no issues with Plaintiff's calculation of freight, demurrage, deadfreight, or bunkering port deviation expenses, all of which remain undisputed.

14. Despite due and repeated demand, to date Defendant has failed to pay any of the outstanding amount of $202,406.59, exclusive of costs and interest.

15. Defendant has offered no explanation for its failure to pay the undisputed amounts owed to Plaintiff.

16. As a result of its failure to pay the undisputed amounts owed to Plaintiff, Defendant has breached the Charter Party dated September 30, 2019.

17. The Charter Party provides for New York arbitration and calls for application of U.S. maritime law.

18. The Society of Maritime Arbitrators ("SMA") routinely awards attorneys' fees and arbitrator's fees to prevailing parties. The undisputed nature of Plaintiff's damages coupled with the Defendant's inexcusable failure to pay these undisputed amounts due under the charter party strongly supports Plaintiff's fee application in the SMA proceedings.

19. On April 27, 2020, Plaintiff commenced arbitration against Defendant by serving its demand for arbitration in accordance with SMA Rules. Attached hereto as **Exhibit 3** is a true and accurate copy of Plaintiff's demand for arbitration.

## RULE B MARITIME ATTACHMENT

20. Given the factual background set out above, Defendant is liable in damages to pay the following sums to Plaintiff:

| | | |
|---|---|---|
| A. | Undisputed Freight (10% of balance): | $96,401.66 |
| B. | Undisputed Deadfreight: | $15,657.55 |
| C. | Undisputed Demurrage (Gladstone): | $74,125.25 |
| D. | Undisputed Demurrage (Lanqiao): | $1,629.37 |
| E. | Bunkering Port Deviation: | $14,592.76 |
| Total Principal Claim Amount: | | $202,406.59 |
| F. | Interest (9 % compounded quarterly for 2 years): | $39,435.11 |
| G. | Plaintiff's Anticipated Attorneys' Fees | $50,000 |
| H. | Arbitrator's Anticipated Fees | $50,000 |
| **I.** | **Total:** | **$341,841.70** |

21. Upon information and belief, non-party PNC Bank has offices and places of business this Judicial District. PNC Bank is a banking institution with offices throughout the United States.

22. Upon information and belief, Defendant holds bank accounts or other assets at PNC Bank in this District. See **Exhibit 4**, Redacted PNC Bank wire information.

23. As evidenced by the Redacted PNC Bank Slip, Defendant maintains one or more bank accounts at PNC Bank in this Judicial District.

24. Since Defendant has used PNC Bank to perform banking transactions with Plaintiff in the past, Plaintiff believes that PNC Bank may be holding funds, accounts, credits, or other property of Defendant in this Judicial District.

25. Upon information and belief, Garnishee PNC Bank holds property belonging to Defendant in this District.

26. Plaintiff seeks security for its now pending New York arbitration proceedings.

27. Defendant is believed to be a Swiss business entity with no office or place of business within this Judicial District

28. As demonstrated by the attached declaration, Plaintiff has attempted to search for the Defendant in this Judicial District, but has been unable to locate any offices or other conditions that would subject Defendant to being "found" within the District within the meaning of Rule B.

29. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the

pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of a garnishee within the District including but not limited to PNC Bank.

30. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant held by PNC Bank or any other garnishees within the District for the purpose of obtaining security for the now pending arbitration proceedings.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint, failing which default judgment be entered against it in the sum of **US $341,841.70.**

B. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, funds, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **US $341,841.70** belonging to, due or being transferred to, from, or for the benefit of the Defendant **XCOAL ENERGY AND RESOURCES GmbH** including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of **PNC BANK.** or any banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the

same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

C. That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

D. That the Plaintiff have such other, further and different relief as the Court deems just, proper and equitable.

Dated: Pittsburgh, PA
May 5, 2020

By:   /s/ David M. McQuiston, Esquire
THOMSON, RHODES & COWIE, P.C.
Firm #720
Two Chatham Center, 10th Floor
Pittsburgh, PA  15219-3499
(412) 316-8661 (DD)
(412) 232-3498 (Fax)
dmcquiston@trc-law.com

Counsel for Plaintiff
d'Amico Dry d.a.c.

## ATTORNEY'S VERIFICATION

1. My name is Timothy J. Nast.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney at Tisdale Law Offices, LLC attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief based on my review of documentation and discussion with counsel for Plaintiff.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff

Dated:   May 5, 2020
         Stamford, CT

*[signature: Timothy Nast]*